**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **DAYRIN ROBINSON,** | § | |
| | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:12-CV-041-O-BL** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | **Referred to U.S. Magistrate Judge** |

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Dayrin Robinson, an inmate currently housed at the Texas Department of Criminal Justice's (TDCJ) Allred Unit, contesting his transfer to a psychological treatment program at the Montford Unit. Because it presents no cognizable ground for federal habeas relief, it is recommended the petition be dismissed.

**I. BACKGROUND**

In 2003, Petitioner began serving a forty-year sentence for aggravated robbery. *See Robinson v. Quarterman*, No. 3:07-CV-101-R, 2007 U.S. Dist. LEXIS 74658, 2007 WL 2907870 (N.D. Tex. Oct. 4, 2007). On December 18, 2009, he was admitted for psychological observation and treatment at the Allred Unit due to a risk of self-harm and decompensation. (Doc. 3, p. 11). On December 21, 2009, Petitioner was transferred and admitted to the Montford Unit inpatient treatment program. *Id.* Petitioner filed a Step 1 grievance that same day contesting the transfer. *Id.* On December 28, 2009, Petitioner was involuntarily admitted into the Montford Unit's Crisis Management program. *Id.* at 13. Petitioner filed a Step 2 grievance on March 26, 2010, contesting the denial of his Step 1. *Id.* at 12–13.

On April 20, 2010, Petitioner was transferred back to the Allred Unit. *Id.* Current TDCJ records indicate that he remains at the Allred Unit.

**II. DISCUSSION**

"Federal habeas relief cannot be granted unless the petitioner alleges that he has been deprived of some right secured to him by the United States Constitution or laws of the United States." *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007). A district court must answer the preliminary question of whether there's a liberty interest that the prison action implicated or infringed. *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) (citing *Meachum v. Fano*, 427 U.S. 215, 223–24 (1976)).

"A prisoner's liberty interest is generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *accord Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (A complained of condition "is not grounds for a due process claim unless it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal quotation marks omitted).

"In the prison context, a liberty interest is created in one of two ways: Either the Due Process Clause confers a liberty interest, or such an interest is created by the state through a statute." *Richardson*, 501 F.3d at 418–19 (citations omitted).

In any case, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with

transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

## III. APPLICATION

### A. What Type of Case is This?

Courts must construe prisoners' complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[B]ut the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *Poux v. Drew*, 2010 U.S. Dist. LEXIS 113433, 2010 WL 4281824 (D. S.C. Sept. 22, 2010) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990)).

Although Petitioner asserts he is challenging: (1) a parole revocation proceeding; (2) a disciplinary proceeding; and (3) "other: identification/psychological arrest," the first two challenges have nothing to do with the instant petition. (*See* Doc. 3, p. 2).

Petitioner's parole revocation occurred on March 26, 2003, nine years prior to the current action. *Id.* at 5. His alleged disciplinary proceeding challenge involved grievance number 2011198134 and was a "time of release conflict." *Id.* This particular grievance is attached to the petition, (*id.* at 20–21), and is described by Petitioner as "a lost property claim" involving an inmate time slip which "is a defamatory address to [his] name and person." This particular Step 1 grievance was returned because "the issue presented is not grievable" and "illegible/incomprehensible." *Id.* at 21.

Neither challenge is applicable to the allegations raised in the instant habeas petition. Further, any challenge to the parole revocation is untimely and the disciplinary proceeding was not exhausted. *See Richardson v. Spurlock*, 260 F.3d 495 (5th Cir. 2001).

The third challenge, framed as "other: identification/psychological arrest," appears to address Petitioner's psychiatric treatment at Montford. (Doc. 3, p. 2). Because potentially an

involuntary psychiatric commitment could implicate a constitutional liberty interest, as discussed further below, the court construes the instant petition to allege such. *See Erickson*, 551 U.S. at 94.

## B. Construed as Habeas Petition

As noted, "[i]n the prison context, a liberty interest is created in one of two ways: Either the Due Process Clause confers a liberty interest, or such an interest is created by the state through a statute." *Richardson*, 501 F.3d at 418–19 (citations omitted).

### 1. Due Process Clause

#### a. No Liberty Interest

"In *Sandin v. Connor,* 515 U.S. 472, 483-84 (1995), the United States Supreme Court held that prison regulations generally do not implicate constitutionally protected liberty interests unless they involve freedom from restraint which 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' After *Sandin*, [the Court of Appeals for the Fifth Circuit] stated in *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir.1995), that apart from creating a liberty interest in good time credits or parole release, 'it is difficult to see that any other deprivations, ... short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional liberty status.'" *Robinson v. Luker*, 199 F.3d 437 (5th Cir. 1999).

"As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Montanye*, 427 U.S. at 242.

Petitioner does not allege that being transferred for psychological evaluation and treatment is atypical of someone in his circumstance. Petitioner does not allege prison officials typically handled involuntary psychiatric commitments a certain way and handled his any differently. Nor does Petitioner allege that his treatment at Montford was not "within the sentence imposed upon him." *See Montanye*, 427 U.S. at 242.

Here, Petitioner "has alleged no facts showing that [his psychiatric treatment at Montford] imposed hardships atypical of ordinary prison life and, therefore, he has failed to show a liberty interest protected by the Due Process Clause." *Samford v. Staples*, 249 F.App'x 1001, 1004 (5th Cir. 2007).

<u>b. Liberty Interest</u>

Even assuming, *arguendo*, the Due Process Clause creates a liberty interest here, Petitioner does not allege such interest was violated. *See Vitek v. Jones*, 445 U.S. 480 (1980).

i. *Vitek* vs. Petitioner

In *Vitek v. Jones*, a prisoner was involuntarily transferred to a mental hospital and given compulsory medication. *Id.* The Supreme Court, after finding that a liberty interest was implicated, held that in that circumstance, relatively robust procedural protections were required. *See id.*; *Meza v. Livingston*, 607 F.3d 392 (5th Cir. 2010) (discussing the spectrum of due process to be afforded in various situations.). The Court held that in the circumstance, notice and an opportunity for a hearing, among other protections, were due to the inmate prior to undergoing treatment. *See Vitek*, 445 U.S. 480.

Petitioner's case is distinguishable from *Vitek*. Critically, not once does Petitioner complain of a failure in procedural protection. He does not infer that a lack of notice or hearing is the "illegal" nature of the acts of which he complains.

In his Step 1 grievance, Petitioner appears to claim prison officials mistook his identity for that of a dead man. (Doc. 3, pp. 3–4). In his Step 2 grievance, Petitioner: recounts events in his criminal history dating back to before his original conviction; again asserts false identity claims; and requests to be taken away from Montford. *Id.* at 12–13. Nowhere in Petitioner's Step 1, Step 2, or petition proper does he allege he was denied notice or a hearing prior to being transferred to Montford.

In an effort to fully convey the essence of Petitioner's claims, the court spells them out in detail. In his Step 1 and Step 2, Petitioner claims he is being held in Montford illegally because "the TDCJ mainframe" reflects an inaccurate inmate number for him. *See id.* at 10, 12. Petitioner claims that the psychiatrist who made the recommendation that Petitioner be admitted to treatment, "Dr. Anders," "abused his official capacity . . . to place me under unlawful restraint by deceiving Allred Unit employees and Montford Unit employees and staff concerning my identity and mental status amounting to organized crime and criminal conspiracy, violating the rights of a person in state custody, and official oppression (sic)."[1] *Id.* at 10 (also claiming: "Dr. Anders was ordered to conduct a psychological evaluation of my person under a falsified identity by the James V. Allred Unit Warden. I was contacted under false identity . . . ." and: "I am at the Montford Unit under false and fraudulent use of identifying information . . . ."). Official responses to Petitioner's grievances indicate that he formerly had the TDCJ number 1041565, but at some point was assigned the new TDCJ number 1220907. *Id.* at 11.

Petitioner's first ground for why he is being held in violation of the Constitution states: "I am illegally restrained of justice for the persons who took illegal action against my person." *Id.* at 6. As "supporting facts," Petitioner states: "for defaming my character, forcing me to attend a

[1] Petitioner's writing bears frequent grammatical and typographical errors. Passages quoted herein are reproduced verbatim.

psych exam with threats, placing me naked in an empty cold cell with concrete floors steal walls and behind an iron door with glass fixtures and torture of my body. I am going to take action by legal process against the parties involved." *Id.*

Petitioner's second ground for why he is being held in violation of the Constitution states: "Illegal restraint by defamation of character and doping." *Id.* As supporting facts, he states: "for the psych hospital personnel who attacked my mind and body with false psychological representation on paper reports and injected me with drugs against my will and no necessity I am going to take action by legal process on behalf of myself my family, my church and my constitution of the United States of America." *Id.*

Petitioner's third ground for why he is being held in violation of the Constitution states: "Illegal restraint by involuntary servitude of officers and prisoners." *Id.* at 7. As supporting facts, he states: "The unit administrators who have caused majors of correctional officers, lieutenants of correctional officers, sargants of correctional officers, and correctional officers to abuse my life and liberty, my person and property, and my biological make up with practices of genocide. I am going to take action by legal process for remedy redress and solution." *Id.*

Finally, Petitioner's fourth ground for why he is being held in violation of the Constitution states: "Illegal restraint from business and commerce, travel and trade; services and accommodations." *Id.* As supporting facts, he states: "The executive agencies in the state of Texas that have not allowed me to reintergrate myself back into society as a human being and have kept me separated from my family, my church, and my career I am going to take action by legal process to release myself from illegal incarceration to join my family, church, and career." *Id.*

It is apparent, then, that the "illegal" nature of the acts of which Petitioner complains is not that the acts denied Petitioner of notice and hearing prior to his treatment. Petitioner claims prison and medical officials falsified his identity, defamed his character, practiced genocide, and kept him from outside society. *Id.* at 6–7. Petitioner does not claim he was denied notice and hearing.

In further distinguishing *Vitek*, the transfer in that case to the mental hospital as punishment was deemed to be atypical and inconsistent with the sentence and authority of the prison. *See Vitek*, 445 U.S. at 493–94. As discussed above, Petitioner does not allege that others in similar circumstances would not have been subject to the same treatment as he underwent.

Additionally, the Court in *Vitek* highlighted the lower court's two reasons why the transfer to the mental hospital implicated a liberty interest: First, a liberty interest was rooted in Nebraska's state statute, which, as discussed further below, Petitioner does not allege exists here. *See id.* at 488–89. Second, the lower court stated that characterizing a prisoner as a mentally ill patient and transferring him to the mental hospital "had some stigmatizing consequences, which, together with the mandatory behavior modification treatment to which [the inmate] would be subject . . . , constituted a major change in the conditions of confinement amounting to a 'grievous loss' that should not be imposed without the opportunity for notice and an adequate hearing." *Id.* at 488. Petitioner neither complains of a stigma, nor alleges he did not have adequate "opportunity for notice and an adequate hearing." *Id.*

In short, the instant case is distinguishable from *Vitek*. The Court's holding in *Vitek* was premised on issues Petitioner does not raise. Accordingly, in the instant case, either no constitutionally protected liberty interest is implicated, or in the alternative, a liberty interest is implicated, but Petitioner does not claim it was violated.

**2. State Statute**

a. Policy G-51.6

The second way a liberty interest is created is by a state statute. *Richardson*, 501 F.3d at 418–19. From the off, Petitioner does not allege a state statute grants him a relevant liberty interest, so the court does not undertake such an analysis.

The court simply notes, "[t]he hallmark of a statute that has not created a liberty interest is discretion. Where the statute grants the prison administration discretion, the government has conferred no right on the inmate." *Id.* (citing *Meachum*, 427 U.S. at 226–27).

Chapter 501, Subchapter E of Texas Government Code authorizes the Correctional Managed Health Care Committee (CMHCC). *See* Tex. Gov't Code Ann § 501 (West 2013). The CMHCC is empowered to draft policies which are compiled in the Correctional Managed Health Care Policy Manual.[2] *See id.* § 501.148 ("The committee *may* . . . develop statewide policies for the delivery of correctional health care.") (emphasis added). Policy number G-51.6, titled "Referral of an offender for admission into a mental health inpatient treatment facility," reads, "Mental health staff, medical staff, local ER staff or ranking security staff . . . *may* refer an offender for evaluation of need for admission to a psychiatric inpatient or crisis management facility."[3]

The court today need not decide whether Texas has a discretionary or mandatory statute. In any event, Petitioner does not allege that any state statute gives him a liberty interest.

**<u>C. Transfer generally</u>**

To the extent Petitioner challenges the facility transfer in and of itself, there is no constitutionally protected liberty interest in not being transferred. *See Adeleke v. Heaton*, 352 F.App'x 904 (5th Cir. 2009). The decision where to house inmates is at the core of prison

[2] *See* http://tdcj.state.tx.us/divisions/cmhc/docs/cmhc_policy_manual/A-05.01.pdf.
[3] *See* http://tdcj.state.tx.us/divisions/cmhc/docs/cmhc_policy_manual/G-51.06.pdf (emphasis added).

administrators' expertise. *Meachum*, 427 U.S. 215; *McKune v. Lile*, 536 U.S. 24, 39 (2002); *Hewitt v. Helms*, 459 U.S. 460, 467, n. 4 (1983) (an inmate's transfer to another facility did not in itself implicate a liberty interest, even though that transfer resulted in the loss of "access to vocational, educational, recreational, and rehabilitative programs."). Without a liberty interest violation concerning the facility transfer itself, Petitioner can receive no habeas relief. *See Teague*, 482 F.3d at 773

**D. Statute of Limitations**

Finally, any habeas petition contesting Petitioner's treatment at Montford was filed too late in time. *See* 28 U.S.C. § 2244(d). Petitioner was transferred back to the Allred Unit on April 20, 2010. (Doc. 3, p. 13). He did not file his petition in federal court until March 13, 2012, roughly twenty-three months later. *See id.* at 1 (bearing file stamp). In any event, the statute of limitations had run on Petitioner's claim. *See* 28 U.S.C. § 2244(d).

## IV. CONCLUSION

In sum, here there is either a liberty interest of which Petitioner does not claim there is a violation, or there is no liberty interest. *See Richardson*, 501 F.3d at 418–19; *Montanye*, 427 U.S. at 242; *Sandin*, 515 U.S. at 483-84; *Orellana*, 65 F.3d at 32; *see also Vitek*, 445 U.S. 480 (finding a liberty interest under different circumstances). With no liberty interest violation, there can be no grant of habeas relief. *Teague*, 482 F.3d at 773; *Richardson*, 501 F.3d 415 (citing *Meachum*, 427 U.S. at 223–24).

Because it shows no cognizable basis for habeas relief, and because Petitioner waited too long to file it, the instant petition should be dismissed. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts; s*ee* 28 U.S.C. § 2244(d).

For the foregoing reasons, it is **RECOMMENDED** that all pending motions in this case be **DENIED** and the petition for writ of habeas corpus be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 20th day of January, 2015.

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**